CHAS. ADLER'S SONS, INC. v. UNITED STATES (No. 3701)[1]

[1] T. D. 46992.

United States Court of Customs and Patent Appeals, February 26, 1934

*Curie, Lane & Wallace* (*Thomas M. Lane* of counsel) for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument December 8, 1934, by Mr. Thomas M. Lane and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, overruling a protest of appellant against the action of the collector at the port of New York in collecting the sum of $8,595.59 as duties upon four imported pearls.

No testimony was introduced upon the trial by the Customs Court, and the cause was submitted upon the following stipulation:

It is stipulated and agreed between counsel in the above-entitled case—

1. That the imported merchandise consists of four pearls imported on or about December 2, 1930, by registered mail, covered by customs entry #794,323, and described as follows:

    1 pearl weighing 17.68 grains.
    1 pearl weighing 17.36 grains.
    1 pearl weighing 17.28 grains.
    1 pearl weighing 18.40 grains.

2. That said pearls are of foreign origin and had been previously imported into the United States and assessed with duty at 20% ad valorem under paragraph 1429 of the Tariff Act of 1922, the entry numbers and dates of entry of said pearls being, respectively, as follows:

| Description | Entry no. | Date of entry | Description | Entry no. | Date of entry |
|---|---|---|---|---|---|
| 1 pearl 17.68 grains | 710944 | July 17, 1929 | 1 pearl 17.36 grains | 827652 | Dec. 14, 1928 |
| 1 pearl 17.28 grains | 779216 | Oct. 16, 1929 | 1 pearl 18.40 grains | 821941 | Dec. 8, 1928 |

3. That said pearls, originally imported as aforesaid, subsequently entered into and formed parts of certain pendants manufactured or produced in the United States with the use of said imported pearls (in some instances together with other imported pearls), said pendants being more specifically described as follows:

The pearl in question weighing 17.68 grains was part of a pendant (exported June 21, 1930, under notice of intent 145297) containing four pearls as follows:

    1 pearl weighing *17.68* grains.
    1 pearl weighing 21.72 grains.
    1 pearl weighing 31.24 grains.
    1 pearl weighing 21.08 grains.

The pearl in question weighing 17.28 grains was part of a pendant (exported June 26, 1930, under notice of intent 147534) containing three pearls as follows:

1 pearl weighing 22.12 grains.

1 pearl weighing 24.72 grains.

1 pearl weighing *17.28* grains.

The pearl in question weighing 17.36 grains was made up into a pendant (exported June 26, 1930, under notice of intent 147534) containing said one pearl.

The pearl in question weighing 18.40 grains was made up into a pendant (exported June 26, 1930, under notice of intent 147534) containing said one pearl.

4. That said pendants, so containing the four pearls in question, were exported under customs supervision in conformity with the drawback provisions in section 313 of the Tariff Act of 1930, or section 313 of the Tariff Act of 1922, and the full amount of duties paid upon the pearls, so used in the manufacture of the exported pendants, was refunded as drawback, less 1 per centum of such duties. A correct photostatic copy of the decision of the Commissioner of Customs, dated May 19, 1930, allowing said drawback, is appended hereto, and marked "Exhibit 1."

5. That the said four pearls covered by said entry #794323 of December 2, 1930, were reimported as loose pearls not set, strung, or mounted in any way, having been removed abroad from the pendants in which they were exported.

6. That the collector assessed duty upon said four pearls in the sum of $8,595.59, which was the amount of drawback of duties allowed on said pearls upon their exportation, as aforesaid, as parts of the pendants above described.

Later the submission of the cause was set aside, and the cause was resubmitted upon said original stipulation and the following additional stipulation:

It is stipulated and agreed between counsel, subject to the approval of the court, as follows:

1. That the submission of the above-mentioned protest for decision may be set aside;

2. That the collector's letter, the appraiser's report, and the consumption entry No. 794323, together with the accompanying invoice papers, of Chas. Adler's Sons, Inc., the subject of the said protest, may be deemed to be a part of the record;

3. That defendant may be deemed to have offered in evidence, subject to plaintiff's objection to their materiality and relevancy, drawback entry No. 1113 of said Chas. Adler's Sons, Inc., and the accompanying notice of intent to export for drawback No. 145297; and drawback entry No. 1599 of said Chas. Adler's Sons, Inc., and the accompanying notice of intent to export for drawback No. 147534.

4. That said protest may be deemed to be resubmitted for decision upon this stipulation and the record as heretofore made.

Upon the record thus made the trial court overruled the protest and entered judgment accordingly. From such judgment this appeal was taken.

The question involved is whether the collector was justified in taking duty on the reimported pearls equal to the amount of the drawback which was allowed appellant at the time of the exportation of the pendants described in the original stipulation, or whether he should have taken duty at the rate of 10 per centum ad valorem under paragraph 1528 of the Tariff Act of 1930.

Said paragraph 1528, insofar as is here pertinent, reads as follows:

PAR. 1528. Pearls and parts thereof, drilled or undrilled, but not set or strung (except temporarily), 10 per centum ad valorem  *  *  *.

Paragraph 1615 of the free list of said Tariff Act of 1930, under which the collector acted, reads, insofar as is here pertinent, as follows:

PAR. 1615. Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means if imported by or for the account of the person who exported them from the United States;  *  *  * but proof of the identity of such articles shall be made, under general regulations to be prescribed by the Secretary of the Treasury,  *  *  * *Provided,* That this paragraph shall not apply to any article upon which an allowance of drawback has been made, the reimportation of which is hereby prohibited except upon payment of duties equal to the drawbacks allowed  *  *  *.

The principal contention of the Government is stated in its brief as follows:

We submit that the collector could only assess duty, as he did, on the reimported merchandise, upon which the drawback had been allowed, in an amount equal to such drawback. As we view the situation, the provisions of paragraph 1615, *supra,* are not only applicable but mandatory. We submit that had not the expressed provisions of paragraph 1615 been complied with the *reentry of the pearls would have been prohibited,* since they were exported with benefit of drawback.

The views above quoted were sustained by the trial court.

If it is a fact that the pearls in question were exported with benefit of drawback, the conclusion necessarily follows that the contention of the Government should be upheld, and the judgment of the trial court should be affirmed.

However, the stipulation expressly states that said pearls, after their original importation, "entered into and formed parts of certain pendants manufactured or produced in the United States with the use of said imported pearls  *  *  *," and that "said *pendants,* so containing the four pearls in question, were exported under customs supervision  *  *  *." (Italics ours.)

The trial court, in its decision, after reciting the original importation of said pearls, stated:

Subsequently these pearls entered into and formed parts of certain pendants manufactured or produced in the United States. In some instances they were combined with other pearls in such pendants. The *pearls in the pendants* were then exported for the benefit of drawback as follows:  *  *  *  (Italics ours.)

The trial court further stated:

*  *  * the *exportation of these pearls* was under customs supervision in conformity with the drawback provisions in section 313 of the Tariff Act of 1922  *  *  *.  (Italics ours.)

It is clear from the stipulation that both the trial court and Government counsel erred in stating that the pearls in question were exported with benefit of drawback. The stipulation clearly states that the pendants containing the pearls were exported. By their use in the manufacture of pendants they lost their tariff identity as pearls, and the benefit of drawback was allowed, not upon the pearls, but upon the pendants containing the pearls. If the pearls had been exported, no drawback could have been allowed; drawback was authorized only because articles, viz, pendants, were manufactured in the United States with the use of said pearls; and because the imported pearls were used in the manufacture of the pendants, drawback was authorized to the full extent of the duties paid upon the original importation of the pearls, less 1 per centum.

Section 313 (a) of the Tariff Act of 1930 is explicit in this regard, wherein it states:

\* \* \* Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the *merchandise so used* shall be refunded as drawback, less 1 per centum of such duties \* \* \*. (Italics ours.)

The order of the Commissioner of Customs authorizing the allowance of drawback upon the pendants, which order was stipulated in evidence as Exhibit 1, being in the form of a letter from said commissioner to the collector at the port of New York, states:

You are hereby authorized to allow drawback on the above-described *articles of jewelry* \* \* \*. (Italics ours.)

It is therefore clear that there was no exportation of pearls, as held by the trial court, but that the exportations were of jewelry containing the pearls here involved.

It is clear that the drawback of duties paid upon imported material is authorized only upon *articles* manufactured or produced in 'the United States in whole or in part out of such material. Section 313, *supra*, authorizing drawback, repeatedly refers to the drawback as being upon the *articles* exported. We can find no warrant for holding that drawback was allowed, or could properly be allowed, upon the exportation of the pearls here in question.

The duty here involved was collected upon the assumption that the proviso in paragraph 1615, *supra*, authorized such collection. It provides that "this paragraph shall not apply to any article upon which an allowance of drawback has been made \* \* \*." Obviously, the articles thus referred to are those which, but for the proviso, would come in free under the language of the paragraph preceding the proviso, and the only articles there mentioned are articles "the growth, produce, or manufacture of the United States." Clearly the pearls here in question are not the "growth, produce, or manu-

facture of the United States", and hence the proviso is not applicable to said pearls. Moreover, it is our view that, irrespective of the language preceding the proviso, the language of the proviso itself excludes its application to the pearls here in question. The particular language to which we refer is in the opening sentence, reading: "That this paragraph shall not apply to any article upon which an allowance of drawback has been made * * *." No allowance of drawback upon said pearls was made, but, as hereinbefore shown, the allowance of drawback was upon the manufactured articles, to wit, jewelry containing said pearls, the duties paid upon imported materials used in such manufactured articles being refunded to the extent of 99 per centum thereof.

We therefore hold that, under the stipulated facts, paragraph 1615, *supra*, has no application to the pearls here involved.

The trial court relies upon the case of *Balfour* v. *Sullivan, Collector*, 19 Fed. 578, affirmed by the United States Supreme Court, 30 L. ed. 962 (not found in official Supreme Court reports), and points out that undoubtedly the proviso in paragraph 492 of the free list of the Tariff Act of 1890, which is identical with the proviso in paragraph 1615 of the Tariff Act of 1930, was enacted in view of said decision, and concludes therefrom that it was the intention to prohibit the free importation of merchandise under such circumstances as exist in the case at bar.

We are in accord with the view of the trial court that the proviso to the drawback paragraph in tariff laws here under consideration was originally enacted in view of the decision in the case of *Balfour* v. *Sullivan, supra,* but we cannot agree that said case has any application to the case at bar.

In that case grain bags had been manufactured in the United States out of material of foreign production, were filled with grain, and exported. Drawback was allowed upon the bags exported to the extent of the duties paid upon the imported material used in the manufacture of the bags. The bags were afterwards imported, and were claimed to be free of duty. The collector took the position that, the drawback having been paid upon exportation, the bags were dutiable upon their return to the United States. The act of Congress then in force provided that "grain bags, the manufacture of the United States, when exported, filled with American products, may be returned to the United States free of duty, under such rules and regulations as shall be prescribed by the Secretary of the Treasury." There was no exception to these provisions. The court held that, under those circumstances, the bags were not subject to duty.

The distinction between the facts in the case at bar and those in the above-cited case is apparent. In that case bags manufactured out of imported material were exported, and the same articles, to wit,

*bags*, were returned. It was not the material out of which the bags were manufactured that was returned, but the manufactured articles, *bags*. In such case, after the enactment of said proviso to the drawback paragraph, such bags would be dutiable to the extent of the amount of the drawback which had been allowed upon their exportation.

In the case at bar the articles exported were pendants containing the imported pearls. If such pendants containing the pearls had been returned to this country in the form in which they were exported, they would be dutiable to the extent of the drawback allowed upon their exportation; no pendants were returned, but only the pearls which had been used in the United States in the manufacture of such pendants. It is thus apparent that said *Balfour* case has no application to the case at bar.

Our discussion of the *Balfour* case may be summarized as follows: We agree with the trial court that the purpose of the proviso here in question, when it was enacted as part of paragraph 453 of the Tariff Act of 1890, was to exclude from free entry those articles which, under the *Balfour* case, would have been entitled to such free entry. Under the theory of the trial court in the case at bar, the pearls here involved would be entitled to free entry but for the presence in paragraph 1528 of the proviso under discussion. It is clear, however, that under the *Balfour* case the pearls here in question would not have been entitled to free entry, even before the proviso was enacted. As already pointed out, the court in the *Balfour* case was not dealing with a reimportation of the *material* out of which the bags had been made, but with the articles *in the condition in which* they were exported. Here we are not dealing with a reimportation of the pendants as exported, but with the pearls which formed a part of said pendants. It is clear that, even without the proviso in paragraph 1615, the pearls here in question would not be entitled to free entry under said paragraph, for reasons already stated.

Therefore, when the reason for the enactment of said proviso is considered, it is plain that Congress never intended that it should apply to a case like that at bar.

It may, or may not, be unfortunate that Congress did not provide in the drawback paragraph for articles reimported under circumstances like those here involved; but, with respect to this, the following language from the opinion in the *Balfour* case is appropriate:

* * * The omission to provide for a repayment of the drawback in such cases may be an oversight on the part of Congress. But whether so or not, to require by regulation the collection of the regular duties upon bags manufactured in the United States, because the bags, when exported, paid a "drawback" for duties on the material of which they were manufactured, is to ingraft an exception on the provisions of the act, authorizing the bags which were "exported filled

580

with American products", "to be returned * * * free of duty", which Congress either did not see fit or omitted to adopt. * * *

Furthermore, while under the *Balfour* case it was evident that Congress had apparently made an oversight, no such result flows from our holding in the present case. Under our construction of said paragraph 1528, free entry is not permitted to any importation which, under said *Balfour* case, would have been entitled to free entry; such free entry is strictly limited, under said paragraph, to articles the growth, produce, or manufacture of the United States, upon which no drawback has been allowed. The fact that a pecuniary advantage accrues, in the instant case, to the importer is, of course, attributable to the fact that the present rate of duty upon the imported merchandise happens to be less than was the rate at the time of the original importation. If the articles in question happened to carry a higher rate under the present tariff act, the advantage would lie with the Government. In other words, our construction of paragraph 1528 cannot be said to result in an anomaly.

The trial court in its decision in the case at bar said:

* * * The record does not indicate whether it was plaintiff's intention to sell these pearls in England or France. Every inference from this record indicates it was the intention of plaintiff to reimport the pearls, as it did in December 1930. The pearls were out of the country for a period not to exceed six months. Therefore, it seems justifiable to believe that the character of this merchandise on the date of exportation in·June 1930 was the same on its reimportation in December 1930. True it was not in the same form, and possibly less in value, but the merchandise was the same pearls. Undoubtedly the value of the pendants was in the pearls, not in the material used in connection with the pearls.

There is nothing in the record to warrant the conclusion that it was appellant's purpose, when it exported the jewelry containing the pearls, to remove the pearls from the jewelry and reimport them for the purpose of obtaining the 10 per centum rate of duty provided in the Tariff Act of 1930, and a drawback of 99 per centum of the duty paid upon the pearls when imported under the Tariff Act of 1922.

The question of good faith of appellant is not raised by the stipulated facts, and it cannot be assumed that appellant's purpose in what it did was to escape a prescribed rate of duty. It is therefore unnecessary for us here to consider whether, if such purpose did appear, the action of the collector should be sustained.

For the reasons stated, the judgment of the Customs Court is *reversed* and the cause is *remanded* with directions to *sustain* the protest of appellant.